UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN RE:                                                       :

EX PARTE APPLICATION OF                                      :    Misc. Action No. _____
REPUBLIC OF KAZAKHSTAN FOR
AN ORDER TO OBTAIN DISCOVERY FOR                             :
USE IN FOREIGN PROCEEDINGS
PURSUANT TO 28 U.S.C. § 1782                                 :
-------------------------------------------------------------x

# EX PARTE APPLICATION OF THE REPUBLIC OF KAZAKHSTAN FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

BY:   Jonathan J. Walsh
      Jason D. Wright
      101 Park Avenue
      New York, New York 10178
      Tel. 212-696-6000
      jwalsh@curtis.com
      jwright@curtis.com

*Attorneys for Petitioner*

Dated: March 19, 2020
       New York, New York

Applicant/Petitioner, the Republic of Kazakhstan, by and through undersigned counsel, prays as follows:

## I. INTRODUCTION AND SUMMARY STATEMENT

1. The Republic of Kazakhstan, pursuant to 28 U.S.C. § 1782 and Federal Rules of Civil Procedure 26, 34, and 45, respectfully requests that the U.S. District Court for the Southern District of New York grant an *ex parte* order authorizing Kazakhstan to obtain certain limited, non-privileged discovery for use in a criminal investigation in Kazakhstan.

2. For assistance in an active criminal investigation, Kazakhstan requests the assistance of this Court to obtain discovery within this district regarding tax revenues unlawfully diverted from the Republic of Kazakhstan to the United States through acts of money laundering, fraud, and tax evasion by individuals and corporate entities affiliated with Anatolie Stati and Gabriel Stati (hereinafter the "TARGETs") and their group of affiliated companies which they have owned or controlled, to include: Ascom Group S.A. ("Ascom"); Terra Raf Trans Traiding Ltd ("Terra Raf"); and Hayden Intervest Limited ("Hayden") (hereinafter the "Stati Parties"). Kazakhstan seeks, through the aid of discovery, wire transmittals and related payment instructions in the possession of King & Spalding LLP issued by these TARGETs who payed legal fees and expenses from certain subject accounts by and through these Stati Parties entities.

3. Law-enforcement investigations in Kazakhstan and elsewhere have revealed that the TARGETS and their entities fraudulently extracted funds from Kazakhstan by, *inter alia*, inflating costs, concealing fraudulent financial reporting, falsifying financial statements, underpaying taxes, and laundering proceeds in connection with two oil and gas contracts. As part of its scheme, the Stati Parties falsified the financial statements of several companies operating in Kazakhstan, to include Kazpolmunay LLP ("KPM") and Tolkynneftegaz LLP

("TNG"), and engaged in a series of inflated related-party transactions through various shell companies in complicity with Reitumu Banka in Latvia. This fraudulent concealment from the auditors, Kazakhstan, and the outside world allowed the Stati Parties to directly and illegally benefit from the value of the overstated costs that substantially deprived the Republic of Kazakhstan.

4. Kazakhstan's preliminary investigation reveals that some of these fraudulently extracted funds were used, in part, to pay legal fees and expenses to their U.S. law firm King & Spalding LLP and other legal advisors and consultants over the course of the last ten years. While these investigations continue, Kazakhstan understands that between 2009 and 2015, the Stati Parties paid over US $17 million alone to King & Spalding LLP in connection with their ongoing disputes with the Republic of Kazakhstan.

5. In support of this Application, Kazakhstan submits and attaches **Exhibit A**, the sworn declaration of investigator Ruslan Ashenov ("Ashenov" Declaration); **Exhibit B**, a proposed subpoena for the production of documents to be served on King & Spalding LLP at 1185 Avenue of the Americas, New York, NY 10036; and a proposed order.

## II. FACTUAL BACKGROUND

6. Since its independence in 1991, Kazakhstan has attracted technical and financial investments to help recover its natural oil and gas reserves. *See* U.S. Dep't of State, 2018 Investment Climate Statements: Kazakhstan (July 18, 2018) available at https://www.state.gov/reports/2018-investment-climate-statements/kazakhstan/.

7. Between 1999 and 2005, the TARGETS, Anatolie Stati and Gabriel Stati, purchased 100% of the shares in the two Kazakh companies, TNG and KPM, through the companies, Terra Raf and Anscom. Both KPM and TNG exploited gas condensate and oil in

3

Kazakhstan. TNG owned the exploitation right to the Tolkyn gas field as well as the exploration right to the Tabyl area. KPM owed corresponding rights to the Borankol field. *Ex. A*, Ashenov Decl. at ¶¶ 8-10.

8. In 2005, KPM and TNG implemented a scheme to circumvent Kazakh tax authorities and deprive KPM and TNG of value. The Stati Parties used two wholly owned non-Kazakh companies, Terra Ref and Montvale Investment Ltd., to sell KPM and TNG's oil and gas condensate to Vitol Group. Vitol Group is a Dutch-Swiss raw materials trading company which trades in petrol, natural gas, coal, emission allowances and bio fuel that purchased the majority of the oil and gas condensate extracted by KPM and TNG. *Ex. A*, Ashenov Decl. at ¶ 20.

9. Vitol Group paid Terra Raf and Montvale for the oil and gas condensate three months in advance, but KPM and TNG did not receive full payment for the deliveries. The Stati Parties diverted substantial funds payable to KPM and TNG to a bank account held by Hayden Intervest Limited, a shell company registered in the British Virgin Islands controlled by Anatolie Stati. *Ex. A*, Ashenov Decl. at ¶ 21.

10. The Stati parties also funneled millions of dollars from TNG to Hayden and other Stati-controlled entities through sham construction contracts for a LPG plant at the Borankol field. Specifically, the Stati Parties caused a contract to be executed between TNG and a company called Perkwood Investment Ltd ("Perkwood"), which was controlled by the Stati Parties. The Stati Parties used the Perkwood contract to charge TNG for equipment that was never delivered or that was highly inflated in price. *Ex. A*, Ashenov Decl. at ¶¶ 17-18.

11. Hayden was merely a shell company formed for the benefit of Anatolie Stati. From October 2005 through October 2016, Anatolie Stati held a general power of attorney to exclusively represent Hayden in all matters. Both Anatolie Stati and his son Gabriel were the

sole beneficiaries of the funds on Hayden's bank account which was opened at Rietumu Banka in Latvia by Gabriel Stati on November 4, 2005. Anatolie Stati was registered as the owner of Hayden's bank account, and Gabriel also held a power of attorney to represent Hayden in all matters from October 2005 to October 2010. *Ex. A*, Ashenov Decl. at ¶ 22.

12. Through Hayden and Rietumu Banka, the Stati Parties diverted substantial proceeds payable to KPM and TNG illegally to other Stati Parties, affiliates, and beneficiaries on the basis of several sham contracts between secretly affiliated companies. *Ex. A*, Ashenov Decl. at ¶¶ 22-23.

13. The Central Authority for the Republic of Lativa produced for Kazakhstan, through an on-going mutual legal assistance request, thousands of pages of documents relating to the more than thirty (30) Stati-affiliated companies with accounts at Rietumu Banka. Through these documents, Kazakhstan has been able to trace some of the money the Stati Parties diverted from KMP and TNG and otherwise to document how the Stati Parties laundered funds for their own personal enrichment and for other fraudulent and illegal purposes. *Ex. A*, Ashenov Decl. at ¶19.

14. In case number 154700121000297, Ruslan Ashenov, an investigator assigned to the Economic Investigation Service of the State Revenue Committee, describes the current pre-trial criminal investigation of the TARGETs and their alleged fraud and money laundering. From Investor Ashenov's analysis of the evidence collected from Latvia and through other sources, he believes that the TARGETs have violated paragraph "b", part 4, Article 177 of the Criminal Code of the Republic of Kazakhstan (as amended in 1997) - fraud committed by a group of persons by prior conspiracy, on a particularly large scale. *Ex. A*, Ashenov Decl. at ¶¶ 16, 24.

15. The Republic of Latvia has produced some relevant documents concerning the diversion of TNG and KPM funds though Hayden and other Stati Party owned or controlled entities, such as Terra Raf, Ascom, Tristan Oil Limited, etc. to bank account(s) in the United States. For example, it is alleged that the Stati Parties diverted laundered and tainted proceeds of approximately US $17,899,838.00 to its law firm, King & Spalding LLP, in the United States from on or about 2010 through 2015 for the purposes of legal expenses. Shell company, Hayden, alone has paid King & Spalding US $95,000. *Ex. A*, Ashenov Decl. at ¶¶ 26-30.

### III.    REASONS FOR GRANTING THE APPLICATION

A.    Legal Framework

16. Section 1782 permits U.S. district courts to grant discovery for use in a pending or reasonably contemplated foreign proceeding to include a criminal investigation. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). As guiding principles, "district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2nd Cir. 2004). The statute, in pertinent part, provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.

28 U.S.C. § 1782(a).

17. "The order may be made . . . upon the application of any interested person and may direct that the thing be produced." *Id.* For the standard of review, a district court must consider first the statutory requirements and then "use its discretion in balancing a number of

6

factors." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F. 3d 76, 80 (2nd Cir. 2012).

For the statutory requirements, "a district court is authorized to grant a § 1782 request where:

> (1) the person form whom discovery is sought resides (or is found) in the district of the district court to which the application is made,
>
> (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and
>
> (3) the application is made by a foreign or international tribunal or any interested person."

*Id.*

18. Once the statutory requirements are met, a district court "is free to grant discovery in its discretion" subject to the *Intel* factors which "bear consideration in ruling on a § 1782(a) request." *Id.* (internal citations omitted). Under the *Intel* factors, after determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a participant in the proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *Intel*, 542 U.S. at 264-65.

B. The Statutory Requirements of Section 1782 Are Satisfied

19. King & Spalding with a place of business at 1185 Avenue of the Americas, New York, New York 10036 has a systematic and continuous presence such that it is "found" or resides with this district. *See In re Republic of Kaz. for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. 1782*, 110 F. Supp. 3d 512 (S.D.N.Y. June 22, 2015).

The requested discovery would be for use in a criminal investigation underway in Kazakhstan. Finally, the Republic of Kazakhstan is an interested party within the meaning of the statute. *Id.* at 515 (finding that a sovereign is an interested party under Section 1782).

C. The *Intel* Factors Are Satisfied.

20. First, King & Spalding is a nonparticipant in the criminal investigation in Kazakhstan and not otherwise a target or a subject of the criminal investigation. *Intel*, 542 U.S. at 264 ("when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad").

21. Second, Kazakhstan is very receptive to U.S. federal-court judicial assistance based on the character of the proceedings underway, i.e., a criminal investigation into alleged fraudsters and money launderers who have diverted proceeds from the Republic of Kazakhstan to third-parties outside of Kazakhstan. *Id.*

22. Third, Kazakhstan's request to this district court does not conceal an attempt to circumvent foreign-proof gathering restrictions or other policies of a foreign country or the United States. *Id.* Kazakhstan is engaged in a fact-intensive inquiry to trace millions of dollars diverted from Kazakhstan by the TARGETs and has engaged in lawful efforts with the assistance of other foreign countries in this endeavor. *Id.* at 264-65.

23. Finally, the requested discovery, evidence of non-privileged wire transmittals and other receipts and deposits from the Stati Parties transmitted through third-party financial institutions, is not unduly intrusive. *Id.* at 265.

## IV. CONCLUSION

24. Kazakhstan's request, in furtherance of its law-enforcement purpose, complies with 28 U.S.C. § 1782 and the *Intel* discretionary factors. For the reason set forth above, Kazakhstan respectfully requests that this Honorable Court grant this application, order the requested discovery, and authorize the issuance of the subpoena attached hereto as Exhibit B.

Dated: March 19, 2020
      New York, New York

                        Respectfully submitted,

                        CURTIS, MALLET-PREVOST,
                          COLT & MOSLE LLP

                        BY:   */s/ Jonathan J. Walsh*
                               Jonathan J. Walsh
                               Jason D. Wright
                               101 Park Avenue
                               New York, New York 10178
                               Tel. 212-696-6000
                               jwalsh@curtis.com
                               jwright@curtis.com

                        *Attorneys for Petitioner*