UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: Ex Parte Application of Republic of Kazakhstan for an Order to Obtain Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 | Case No. 20-MC-167-JMF |

## ANATOLIE STATI, GABRIEL STATI, ASCOM GROUP, S.A., AND TERRA RAF TRANS TRAIDING LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION TO THE REPUBLIC OF KAZAKHSTAN'S § 1782 APPLICATION

Dated: New York, New York
       May 15, 2020

KING & SPALDING LLP
James E. Berger
Charlene C. Sun
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
(212) 556-2222 (fax)
jberger@kslaw.com

*Attorneys for Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 5

I.     THE ROK'S CAMPAIGN OF INTIMIDATION AND HARASSMENT AGAINST THE
STATI PARTIES ....................................................................................................... 5

II.    THE SCC ARBITRATION ....................................................................................... 5

III.   POST-AWARD PROCEEDINGS ........................................................................... 6

    A.   THE SWEDISH SET-ASIDE PROCEEDINGS ....................................................... 6
    B.   THE U.S. ENFORCEMENT PROCEEDINGS ........................................................ 8
    C.   THE ROK'S FAILED RICO ACTION ............................................................... 9
    D.   THE ROK'S 1782 APPLICATIONS .................................................................. 10

IV.   The Kazakh Criminal Investigation ................................................................... 13

ARGUMENT ................................................................................................................. 15

I.     THE COURT SHOULD PERMIT THE STATI PARTIES TO INTERVENE .............. 15

    A.   THE STATI PARTIES MAY INTERVENE AS OF RIGHT ................................... 15
    B.   IN THE ALTERNATIVE, THE STATI PARTIES SHOULD BE GRANTED PERMISSIVE
INTERVENTION ............................................................................................. 16

II.    LEGAL STANDARD FOR § 1782 DISCOVERY ....................................................... 17

III.   THE COURT SHOULD DENY THE ROK'S APPLICATION ..................................... 18

    A.   THE § 1782 APPLICATION DOES NOT SATISFY THE DISCRETIONARY FACTORS SET
FORTH IN INTEL ........................................................................................... 18
         1.   The Nature and Receptivity of the Foreign Tribunal Weighs Against
Granting Discovery .................................................................................. 18
         2.   The Application Conceals an Attempt to Circumvent Foreign Proof-
Gathering Restrictions and Policies of the United States ........................ 20
         3.   The Discovery Sought is Improper Under Fed. R. Civ. P. 26 ................. 22
             a.   The ROK's Discovery Requests are Cumulative, Duplicative and
Irrelevant ...................................................................................... 22

CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Esses*,
　101 F.3d 873 (2d Cir. 1996)..................................................................17

*In re Application of the Gov't of the Lao People's Democratic Republic*,
　No. 15-mc-18, 2016 WL 1389764 (D.N. Mar. I. Apr. 7, 2016) ..............................19

*In re Application of Grynberg, et al.*,
　223 F. Supp. 3d 197 (S.D.N.Y. 2017)...........................................................21

*In re Auto-Guadeloupe Investissement S.A.*,
　12-MC-221 (RPP), 2012 U.S. Dist. LEXIS 147379 (S.D.N.Y. Oct. 10, 2012) .....................22

*Diversified Grp. Inc. v. Daugerdas*,
　217 F.R.D. 152 (S.D.N.Y. 2003) ..............................................................16

*Euromepa, S.A. v. R. Esmerian*,
　51 F. 3d 1095 (2d Cir. 1995)..................................................................22

*Gloria D. Dickerson v. USAir, Inc.*,
　96 Civ. 8560 (JFK), 2001 U.S. Dist. LEXIS 27 (S.D.N.Y. Jan. 4, 2001) ............................21

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
　No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. Jun. 29, 2015) ..............................20

*Hardin v. Jackson*,
　600 F. Supp. 2d 13 (D.D.C. 2009) ............................................................16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　542 U.S. 241 (2004)......................................................................17, 18

*Mass. Bricklayers & Mason Funds v. Deutsche Alt-A Secs.*,
　273 F.R.D. 363 (E.D.N.Y. 2011) .............................................................17

*N. River Ins. Co. v. Phila. Reinsurance Corp.*,
　63 F.3d 160 (2d Cir. 1995)................................................................19, 20

*Republic Kazakhstan v. Stati, Anatolie, et al.*,
　140 S. Ct. 381 (2019)......................................................................2, 9

*Republic of Kazakhstan, Ministry of Justice, v. Anatolie Stati, et al.*,
　801 Fed. Appx.780 (D.C. Cir. 2020). ....................................................3, 10, 20

*Sackman v. Liggett Grp., Inc.*,
 167 F.R.D. 6 (E.D.N.Y. 1996) ...............................................................................15, 16, 17

*In re Sarrio, S.A.*,
 119 F.3d 143 (2d Cir. 1997)...........................................................................................16

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
 376 F.3d 79 (2d Cir. 2004)............................................................................................18

*Stati et al. v. Republic of Kazakhstan*,
 773 Fed. Appx. 627 (D.C. Cir. 2019), *rehearing en banc denied* (D.C. Cir.
 2019). .......................................................................................................................1, 9, 20

*U.S. v. Pitney Bowes, Inc.*,
 25 F.3d 66 (2d Cir. 1994)...............................................................................................15

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
 922 F.2d 92 (2d Cir. 1990).............................................................................................15

**Statutes**

28 U.S.C. § 1782 ................................................................................................... *passim*

RICO ...................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 24(a) ......................................................................................................15

Fed. R. Civ. P.  24(a)(2)..................................................................................................17

Fed. R. Civ. P. 24(b)(1)..................................................................................................16

Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (collectively, the "Stati Parties"),[1] by and through their undersigned counsel, hereby submit this memorandum of law (1) in support of their motion to intervene (the "Motion") herein; and (2) in opposition to the Republic of Kazakhstan's (the "ROK") application (the "Application") for an order authorizing it to take discovery from King & Spalding LLP ("King & Spalding")[2] pursuant to 28 U.S.C. § 1782 purportedly in aid of pre-trial criminal proceedings pending in Kazakhstan. The Court should deny the Application for all the reasons that follow.

## PRELIMINARY STATEMENT

This is the eighth application pursuant to 28 U.S.C. § 1782 that the ROK has filed in connection with its six-year campaign to undermine the Stati Parties' enforcement of an over US$500 million arbitral award (the "Award") rendered in their favor and against the ROK in 2013. The Award has been recognized in the United States:  the United States District Court for the District of Columbia (the "D.C. Court") confirmed the Award and reduced it to a judgment (the "Judgment") on March 23, 2018 (*Stati et al. v. Republic of Kazakhstan*, 1:14-cv-01638-ABJ-DAR, D.D.C. (the "D.C. Proceedings"), ECF 70), the Court of Appeals for the D.C. Circuit ("D.C. Circuit") affirmed the judgment on April 19, 2019 (*Stati et al. v. Republic of Kazakhstan*, 773 Fed. Appx. 627 (D.C. Cir. 2019)) and denied the ROK's petition for rehearing *en banc* on June 4, 2019 (*Stati et al. v. Republic of Kazakhstan*, No. 18-7047, Order of June 4, 2019, D.C. Cir.), and the Supreme Court of the United States denied the ROK's petition for *certiorari* on October 15, 2019

---

[1]    Hayden Intervest Ltd. is not represented by the undersigned and is not considered part of the definition of Stati Parties as used herein.

[2]    King & Spalding does not intend to oppose the 1782 application, but reserves its rights to object to the scope of any subpoena served to the extent it imposes an undue burden and to negotiate an appropriate protective order before any documents are produced.

(*Republic of Kazakhstan v. Stati, Anatolie, et al.*, 140 S. Ct. 381 (2019)).  Undeterred, the ROK steadfastly refuses to satisfy its obligations under the Judgment or Award and instead has embarked upon a worldwide campaign to besmirch the Stati Parties and undermine the Award and its enforcement.

One of the linchpins of that campaign is the ROK's allegation that the Stati Parties "procured the Award by fraud."  In 2015, the ROK sought permission from this Court to seek discovery from the law firm Clyde & Co. pursuant to § 1782 in an effort to build its fraud claim. (*In re: Ex Parte Application of Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 15 Misc. 0081(KMW), S.D.N.Y.).  The ROK prevailed on that application, and subsequently presented the evidence it obtained to the Svea Court of Appeal ("Svea Court") in Stockholm, Sweden, which, as the court of primary jurisdiction with respect to the (Stockholm-seated) Award, was then considering the ROK's application to vacate the Award.  The Svea Court heard the ROK's full fraud case, but found no basis to set aside the Award in December 2016.  (D.C. Proceedings, ECF 45, at 2-3; ECF 46, at 1-2).  The ROK then sought review by the Supreme Court of Sweden, which also refused to disturb the Award in a ruling rendered in October 2017.  (D.C. Proceedings, ECF 64).

The ROK simultaneously sought to air its fraud case in the D.C. Court.  While proceedings to confirm the Award were pending before that court, the ROK sought to submit its alleged evidence of fraud to that court as a defense to recognition of the Award.  (D.C. Proceedings, ECF 32).  The D.C. Court, however, rejected that request, finding, like the Swedish Court, that the ROK's allegations – even if true – would not have made a difference in the outcome of the arbitration.  (D.C. Proceedings, ECF 36; ECF 70).  The D.C. Court further ruled that the ROK had

its opportunity to present its allegations of fraud in Sweden, and would not get a second bite at the apple in the United States.  (D.C. Proceedings, ECF 70, at 18).

Undeterred by these adverse rulings, and in a transparent attempt to circumvent the D.C. Court's decision, the ROK repackaged its rejected fraud defenses to enforcement into a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and filed it in the same court in October 2017.  (*Republic of Kazakhstan v. Anatolie Stati, et al.*, No. 1:17-cv-02067-ABJ, D.D.C.).  The D.C. Court dismissed the RICO claim, and the D.C. Circuit recently affirmed that dismissal.  (*See Republic of Kazakhstan v. Anatolie Stati, et al.*, No. 1:17-cv-02067-ABJ, D.D.C., ECF 29; *Republic of Kazakhstan, Ministry of Justice, v. Anatolie Stati, et al.*, 801 Fed. Appx.780 (D.C. Cir. 2020)).

In addition to the above described efforts to thwart recognition of the Award before the D.C. Courts, in 2018 and 2019, the ROK filed six additional 1782 applications – four in this Court[3] – seeking discovery from various third parties purportedly for the purpose of propping up its fraud claim and undermining enforcement of the Award in Belgium, Luxembourg, the Netherlands and Italy, where proceedings remained ongoing.  Although the ROK obtained the documentary evidence it sought, courts in each of those jurisdictions have recognized and enforced the Award (save for the Netherlands, where the proceedings are still pending, with judgment expected on July 7, 2020).

---

[3]  *In re Application of Republic of Kazakhstan for an Order Directing Discovery from Linklaters LLP Pursuant to 28 U.S.C. § 1782*, S.D.N.Y. No. 18-MC-540 (GHW); *In re Application of Republic of Kazakhstan for an Directing Discovery from Jefferies & Co. Pursuant to 28 U.S.C. § 1782*, S.D.N.Y No. 18-MC-541 (GHW); *In re Application of Republic of Kazakhstan for an Order Directing Discovery from GLG LLC Pursuant to 28 U.S.C. § 1782*, S.D.N.Y. No. 18-MC-542 (GHW); *In re Application of Republic of Kazakhstan for an Order Directing Discovery from Renaissance Capital Pursuant to 28 U.S.C. § 1782*, S.D.N.Y. No. 18-MC-543 (GHW).

In November 2019, the ROK returned **again** to the Swedish courts to seek to set aside the Award, based on allegedly "new evidence" obtained from the aforementioned Section 1782 applications and from Latvian authorities.  (Declaration of Egishe Dzhazoyan dated May 15, 2020 (the "Dzhazoyan Decl.,"), ¶ 8).  The ROK's new application proffered a theory of tax evasion and money laundering; despite re-labeling the alleged misconduct, however, the allegations focus on the same facts and circumstances as the fraud claims that the D.C. Court and multiple foreign courts have refused to recognize as a basis to refuse recognition of the Award.  (Dzhazoyan Decl., at ¶ 8).  The Svea Court of Appeal in Stockholm dismissed the ROK's new application in January 2020, finding that it was barred by *res judicata*, and finding further that the application was based merely on a new formulation of its fraud theory, rather than new facts, noting that "the information provided by Kazakhstan shows that the action is based on circumstances which could have been relied on in the previous case."  (*Id*., at ¶¶ 8-9).  The Swedish Court also refused to grant leave to appeal its ruling to the Swedish Supreme Court, thus making it final and binding as a matter of Swedish law. (*Id*., at ¶ 9).

Having failed to convince any court in the United States or elsewhere to refuse to enforce the Award, and having had its RICO claim forcefully dismissed, the ROK has now returned to this District to seek yet **more** discovery, this time from the Stati Parties' New York-based counsel, purportedly in aid of a criminal investigation it claims to be conducting in Kazakhstan.  This Court should refuse to indulge such abuses of state power and should reject the ROK's attempts to utilize the U.S. courts in its seemingly endless campaign to attack the Award, which has been upheld by the U.S. courts, as well as those of Sweden, Luxembourg, Belgium, and Italy.  (Dzhazoyan Decl., ¶¶ 10-14).  The Court should deny the ROK's Application.

**FACTUAL BACKGROUND**

## I.   THE ROK'S CAMPAIGN OF INTIMIDATION AND HARASSMENT AGAINST THE STATI PARTIES

The Stati Parties were investors who became the operators of the Borankol and Tolkyn oil fields, as well as the Tabyl exploration block, in Kazakhstan.  (D.C. Proceedings, ECF 1, at ¶¶ 29-30).  They made substantial investments in the oil fields and the exploration block through Kazpolmunay LLP ("KPM"), a closed stock company which owned the subsoil use rights to the Borankol oil field, and Tolkynneftagaz ("TNG"), a Kazakh company that owned the subsoil use rights to the Tolkyn oil field and the Tabyl exploration block.  (*Id*., at ¶¶ 31-32).  The Stati Parties invested over US$1 billion developing the oil fields and exploring the Tabyl Block.  (*Id*., at ¶ 32).  TNG also commenced construction of a liquefied petroleum gas plant (the "LPG Plant").  (*Id*.).

Less than seven years after the Stati Parties first invested in the ROK, and just as their investments had begun to yield significant returns, the ROK embarked on a campaign of intimidation and harassment to force the Stati Parties to sell their investments to the ROK's state-owned oil company, including by (1) publicly accusing the Stati Parties of fraud and forgery which impaired their credit rating and clouded their title to TNG; (2) levying more than US$70 million in baseless back taxes against KPM and TNG; (3) arresting and prosecuting KPM's general manager for alleged "illegal entrepreneurial activity," and sentencing him to a four year prison term and a US$145 million fine; and (4) seizing KPM's and TNG's assets without adequate basis.  (*Id*., at ¶ 33).

## II.   THE SCC ARBITRATION

As a result of the ROK's draconian actions against the Stati Parties and their investments, the Stati Parties commenced the Arbitration (the "Arbitration") under the Energy Charter Treaty (the "ECT") and the Arbitration Rules of the Stockholm Chamber of Commerce (the "SCC") on

July 26, 2010. (D.C. Proceedings, ECF 2-1, at ¶ 6)

After rejecting the ROK's jurisdictional objections, the Tribunal issued the Award in December 2013 finding, *inter alia*, that the ROK's actions "constituted a string of measures of coordinated harassment" in breach of its obligation to treat investors fairly and equitably under the ECT.  (D.C. Proceedings, ECF 2-2, ¶ 830, ECF 2-3, at ¶ 1095).  The Tribunal awarded the Stati Parties approximately US$500 million in damages; US$199 million of the Award's damages were attributable to the value of the LPG Plant, the valuation of which is central to the ROK's fraud claim.  (D.C. Proceedings, ECF 2-4, at ¶ 1885, § N).  In the Award, the Tribunal rejected both parties' evidence concerning the valuation of the LPG Plant, holding instead that "the relatively best source for the valuation … are the contemporaneous bids that were made for the LPG Plant by third parties after [the Stati Parties'] efforts to sell the LPG Plant."  (D.C. Proceedings, ECF 2-4, at ¶ 1746).  State-owned KazMunaiGas ("KMG") had submitted one such bid, which the Tribunal considered as the "relatively best source of information for the valuation of the LPG Plant among the various sources of information submitted by the Parties…".  (*Id*., at ¶ 1747).

## III.   POST-AWARD PROCEEDINGS

### A.   THE SWEDISH SET-ASIDE PROCEEDINGS

Despite the final and binding nature of the Tribunal's decision, the ROK did not honor the Award and has, to date, adamantly refused to pay a single cent to the Stati Parties.  (Dzhazoyan Decl., at ¶ 2).  Instead, the ROK has embarked on a worldwide scorched-earth campaign to defeat enforcement of the Award and evade its obligations.  That campaign began on March 19, 2014 in Sweden, the seat of the Arbitration and the sole jurisdiction with plenary authority over the Award, where the ROK instituted annulment proceedings to set-aside the Award.  (*Id*.).  The ROK's initial case for annulment did not include any allegations of fraud.  (*Id*., at ¶ 3).  The ROK alleges that it

only began to "unravel" the allegedly fraudulent scheme in the summer of 2015, after it obtained documents from Clyde & Co. through U.S. discovery proceedings. (D.C. Proceedings, ECF 35, at 6). The ROK then amended its pleadings in the Swedish set-aside proceedings to allege that the Award was "procured by fraud" and was thus contrary to Swedish public policy. (Dzhazoyan Decl., at ¶ 4).

On December 9, 2016, the Svea Court of Appeal (the "Svea Court") in Sweden rejected all the ROK's claims, including its allegations of fraud, and refused to annul the Award. (D.C. Proceedings, ECF 45, at 1). Of note, the Svea Court found that even if the ROK's allegations that the Stati Parties submitted false evidence concerning the LPG Plant costs were accepted as true, that evidence did not directly affect the Tribunal's damages calculation because the Tribunal relied upon an indicative third party bid – the KMG bid, as noted above – in determining the value of the LPG Plant. (D.C. Proceedings, ECF 45-2, at 41). Specifically, the Svea Court held that "[s]ince the [T]ribunal based its decision on the indicative bid, the evidence invoked by [the Stati Parties] in the form of oral testimony, witness statements and expert reports regarding the amount of the investment [in the LPG Plant] – evidence which [the ROK] claimed was false – has not been of direct significance to the outcome." (*Id*., at 42). On whether the indicative bid itself amounted to false evidence, the Svea Court concluded that because the bid was made prior to the Arbitration, "[t]he indicative offer *per se* is thus not to be regarded as false evidence even if potentially incorrect details of the amount invested in the LPG Plant … have been *among the factors* that KMG took into account when calculating the size of the bid." (*Id*.) (emphasis added). Finally, the Svea Court ordered the ROK to pay the Stati Parties' all of their claimed legal costs in the amount of approximately US$3.3 million, which were never paid by the ROK. (Dzhazoyan Decl., at ¶ 6). The ROK filed a motion for extraordinary review before the Swedish Supreme Court to quash the

Svea Court's judgment, but Sweden's highest court denied that motion on October 24, 2017.  (D.C. Proceedings, ECF 64).

After the ROK had exhausted all avenues of appeal in Sweden, in November 2019, it filed yet another application with the Svea Court to set aside the Award based on a slightly different theory of fraud, alleging this time that the Stati Parties engaged in self-dealing with respect to their investments and thereby caused the value of those investments to plummet.  (Dzhazoyan Decl., at ¶ 8).  On January 31, 2020, the Svea Court dismissed the ROK's application,[4] finding that the action was "based on circumstances which could have been relied on in the previous case," and concluding that its prior decision upholding the Award therefore served as res judicata.  (*Id.*, at ¶ 9).  The Svea Court also refused to grant leave to appeal its ruling to the Swedish Supreme Court, thus making it final and binding as a matter of Swedish law.  (*Id.*).

### B.    THE U.S. ENFORCEMENT PROCEEDINGS

The Stati Parties commenced enforcement proceedings in the D.C. Court on September 30, 2014 (D.C. Proceedings, ECF 1); and the ROK filed its opposition on February 26, 2015 (D.C. Proceedings, ECF 20).

More than a year after filing its opposition, the ROK filed a motion for leave to file "additional grounds" on April 5, 2016 in support of its opposition to enforcement.  (*Id.*; D.C. Proceedings, ECF 32).  In its motion, the ROK alleged that it had "[come] into possession of new evidence" that "the [US]$199 million awarded to the Statis for the LPG Plant in the [Arbitration] was a direct result of [a] fraud" perpetrated by the Stati Parties, and that the alleged fraud "renders the entire award unenforceable…"  (D.C. Proceedings, ECF 32, at 6).  The ROK, however, noted

---

[4]    Although the ruling is dated January 31, 2020, it was made public and communicated to the parties on March 9, 2020.

that "[t]o date, Kazakhstan has not completely unraveled the totality of [the Stati Parties'] fraud," (D.C. Proceedings, ECF 32, at 6), and acknowledged the possibility that its injection of its fraud allegations could require the parties to engage in discovery.  (D.C. Proceedings, ECF 35, at 4-5).

The D.C. Court denied the ROK's motion on May 11, 2016, concluding that it was not "in the interest of justice to conduct a mini-trial on the issue of fraud here when the arbitrators themselves expressly disavowed any reliance on the allegedly fraudulent material" and noted that "the issue ha[d] already been presented to the Swedish authorities."  (D.C. Proceedings, ECF 36, at 3-4).  The D.C. Court further noted that the Tribunal expressly disregarded the "allegedly fraudulent" evidence in reaching its decision on the quantification of damages.  (D.C. Proceedings, ECF 36, at 3)

The ROK filed a motion for reconsideration on May 18, 2016.  (D.C. Proceedings, ECF 37).  After the Swedish proceedings came to an end on October 24, 2017, the D.C. Court denied the ROK's motion for reconsideration and rendered the Judgment confirming the Award on March 23, 2018.  (D.C. Proceedings, ECF 70).  The D.C. Circuit affirmed the judgment (D.C. Proceedings, ECF 108) and denied the ROK's petition for rehearing *en banc*.  (*Stati et al. v. Republic of Kazakhstan*, 773 Fed. Appx. 627 (D.C. Cir. 2019); *Stati et al. v. Republic of Kazakhstan*, No. 18-7047, Order of June 4, 2019, D.C. Cir.).  The Supreme Court denied *certiorari* on October 15, 2019.  (*Kazakhstan v. Stati, Anatolie, et al.*, 140 S. Ct. 381 (2019)).

### C.    THE ROK'S FAILED RICO ACTION

In parallel to the enforcement proceedings in the D.C. Court, on October 5, 2017, the ROK filed a new action before the D.C. Court, reframing its fraud defense as a complaint alleging civil violations of the RICO statute.  (*Republic of Kazakhstan v. Anatolie Stati, et al.*, Civil Action No. 17-2067-ABJ, D.D.C. (the "RICO Proceedings")).  Specifically, the ROK alleged that the Stati

Parties engaged in fraud to inflate the value of the LPG plant to enrich themselves, concealing the alleged fraud during the Arbitration and in the subsequent proceedings to enforce the arbitral award, and engaged in wire fraud, mail fraud and money laundering by communicating with and paying its counsel King & Spalding to litigate those enforcement proceedings.   (RICO Proceedings, ECF 1).  The D.C. Court dismissed the action (and dismissed the RICO claims with prejudice), finding that the ROK had failed to adequately allege predicate acts of mail fraud, wire fraud and money laundering, or a pattern of racketeering.  (RICO Proceedings, ECF 30, at 16). The D.C. Court remarked that:

> At bottom, this suit is yet another attempt to relitigate the underlying arbitral award.   Whatever fraud Kazakhstan contends occurred before and during the SCC arbitration more than eight years ago, it had a full opportunity to raise those issues in the appeals process in Sweden and its allegations were rejected. Kazakhstan tried again in the numerous subsequent proceedings where it has resisted the enforcement of the arbitral award on the same grounds …. Casting defendants' enforcement proceedings now as an unlawful "pattern of racketeering activity," is an improper use of the auspices of this Court to revive and prolong a dispute that is over.

(RICO Proceedings, ECF 30, at 15).  The D.C. Circuit affirmed the D.C. Court's decision, and denied the ROK's petition for rehearing *en banc*.  (*Republic of Kazakhstan, Ministry of Justice, v. Anatolie Stati, et al.*, 801 Fed. Appx.780 (D.C. Cir. 2020); *Republic of Kazakhstan, Ministry of Justice, v. Anatolie Stati, et al*, No. 19-7038, Order of April 22, 2020, D.C. Cir.).

### D.     THE ROK'S 1782 APPLICATIONS

In March 2015 – about six months after the Stati Parties commenced judicial proceedings to enforce the Award – the ROK filed a 1782 application in this Court (Stein, J.) requesting that the English law firm Clyde & Co. – counsel to Vitol, the Stati Parties' former joint venture partner

in Kazakhstan – produce all orders, rulings, transcripts, pleadings, submissions, and witness evidence concerning the LPG Plant from three separate London seated arbitrations. (*In re: Ex Parte Application of Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, No. 15 Misc. 0081(KMW), S.D.N.Y., ECF 1-1, at 7). Judge Stein of this Court granted the application, (*Id.*, Order of March 30, 2015), and the ROK presented the evidence obtained to the Svea Court, which was at the time determining whether to set aside the Award. As noted above, the Svea Court gave the ROK a full hearing on its fraud evidence and ultimately concluded that the ROK's fraud allegations did not suffice to set the Award aside. (D.C. Proceedings, ECF 45-2, at 41).

In February 2018, the ROK filed an *ex parte* application in the United States District Court for the District of Minnesota seeking discovery pursuant to 28 U.S.C. § 1782 ("Section 1782") from Black River Emerging Markets Fund Ltd., Black River Emerging Markets Credit Fund Ltd., Black River Emco Master Fund Ltd., and CVI GVF (Lux) Master S.a.r.l. by CarVal Investors, LLC, purportedly in aid of its opposition in proceedings to enforce the Award that were then pending in England, the Netherlands, Belgium and Luxembourg. (*In re: Petition of Republic of Kazakhstan for an Order Directing Discovery from Black River Emerging Markets Fund Ltd.; Black River Emerging Markets Credit Fund Ltd.; Black River EMCO Master Fund Ltd.; CVI GVF (Lux) Master S.A.R.L. by Carval Investors, LLC, Pursuant to 28 U.S.C. § 1782*, No. 18-cv-413 (SRN/SER), D. Minn., ECF 1). The Minnesota court granted ROK's *ex parte* 1782 application on February 15, 2018, although the ROK did not seek to compel compliance with the subpoenas served until August 2019. (*Id.*, ECF 3, at 18). While the ROK — on the morning it was to be heard — ultimately withdrew that motion to compel, it is currently seeking to compel a deposition under color of the Minnesota court's 2018 order.

In November 2018, the ROK filed four additional 1782 applications in this Court (Woods, J.) seeking discovery from Linklaters LLP, Jefferies & Co., GLG LLC, and Renaissance Capital purportedly in aid of proceedings to enforce the Award pending in Belgium, Luxembourg, the Netherlands and Italy.  (*In re Application of Republic of Kazakhstan for an Order Directing Discovery from Linklaters LLP Pursuant to 28 U.S.C. § 1782*, S.D.N.Y. No. 18-MC-540 (GHW); *In re Application of Republic of Kazakhstan for an Directing Discovery from Jefferies & Co. Pursuant to 28 U.S.C. § 1782*, S.D.N.Y No. 18-MC-541 (GHW); *In re Application of Republic of Kazakhstan for an Order Directing Discovery from GLG LLC Pursuant to 28 U.S.C. § 1782*, S.D.N.Y. No. 18-MC-542 (GHW); *In re Application of Republic of Kazakhstan for an Order Directing Discovery from Renaissance Capital Pursuant to 28 U.S.C. § 1782*, S.D.N.Y. No. 18-MC-543 (GHW)).  The ROK's additional Section 1782 applications again sought evidence to prove its theory that the Award was procured by fraud.  The court granted the ROK's 1782 applications, and the ROK obtained the documentary evidence it sought.[5]

Finally, on February 7, 2019, the ROK filed an *ex parte* 1782 application in the United States District Court for the Southern District of Texas seeking discovery from Artur Lungu (the former Chief Financial Officer of Ascom) for the purpose of demonstrating that the Award was procured by fraud.  (*In re: Application of Republic of Kazakhstan for Oder Directing Discovery from Artur Lungu Pursuant to 28 U.S.C. § 1782*, 4:19-MC-00423, S.D. Tex., ECF 1).  The petition

---

[5]   Apparently dissatisfied with the discovery it obtained from Linklaters, in February 2020, the ROK – without obtaining leave from Judge Woods – served a deposition subpoena upon Linklaters notwithstanding the fact that the initial 1782 application did not authorize deposition testimony.  On March 11, 2020, Linklaters filed a motion to quash that subpoena, which was granted by Judge Woods the same day on grounds that "there is no basis for the Republic to seek to depose the respondent under the auspices of this Court's prior rulings in this matter."  *In re Application of Republic of Kazakhstan for an Order Directing Discovery from Linklaters LLP Pursuant to 28 U.S.C. § 1782*, S.D.N.Y. No. 18-MC-540 (GHW), ECF 65.

was granted and the ROK obtained documents from, and was permitted to depose, Mr. Lungu in April 2019.  (*Id*., ECF 6).

Notwithstanding the abundance of documentary and testimonial evidence collected by the ROK through its 1782 proceedings, it still has yet to convince any court to refuse to recognize the Award.  In addition to the U.S., the courts of Sweden, Luxembourg, Belgium, and Italy, after hearing the ROK's evidence, confirmed and allowed enforcement of the Award.  (Dzhazoyan Decl., at ¶¶ 10-14).  Although the Dutch courts have yet to finally rule on the enforcement of the Award, they have permitted and upheld the attachment of certain valuable Kazakh state property in aid of enforcing the Award.  (*Id*., at ¶ 14).

## IV.   THE KAZAKH CRIMINAL INVESTIGATION

The ROK has a long history of using criminal investigations to further its political goals, particularly with respect to its dealings with the Stati Parties.  As the Tribunal found in the Award, in order to effectuate the expropriation of the Stati Parties' investment, the ROK used "a string of measures of coordinated harassment by various institutions of the ROK" (D.C. Proceedings, ECF No. 2-3, at ¶ 1086), including by launching a "relentless onslaught of inspections" into KPM (one of the Stati Parties' companies) (*Id*., at ¶ 1414), "on-going taxation claims by the State" (*Id*., at ¶ 1425), levying criminal fines against KPM, notwithstanding the absence of any formal charges against KPM, that were "contrary to Kazakh law" (*Id*., at ¶ 1093), imprisoning the senior-most officer of KPM (*Id*., at ¶ 1425), and making "very public" criminal fraud allegations against the Stati Parties causing Moody's to downgrade the company's credit rating (*Id*., at ¶ 1416), all of which the Tribunal found devastated the value of the Stati Parties' investment and facilitated the sale of that investment to the ROK's state-owned oil company at a substantially depreciated price (*Id*., at ¶ 1416).

Although the ROK has not disclosed in this proceeding when it commenced the criminal investigation that serves as the basis for this application (No. 154700121000297), as far as the Stati Parties are aware, it was initiated after the Award was issued.  (Dzhazoyan Decl., at ¶ 15). The criminal investigation has been used by the ROK to fish for evidence to use to attack the Stati Parties' Award from various government authorities, including in Latvia,[6] Russia and Moldova. (*Id*.).

Public statements made by ROK officials suggest that this proceeding was intended, in part, as a public "unveiling" of the ROK's allegations against the Stati Parties.  (*Id*., at ¶ 17). Specifically, on March 11, 2020 – two days after the Swedish Court rejected its second attempt to vacate the Award, and **a mere eight days** before the instant 1782 application – Mr. Marat Beketayev, the Minister of Justice of Kazakhstan, publicly commented on the Swedish Court loss as follows:  "You got it wrong. It's not a final defeat. There are many procedural options, including an appeal. I will probably open the veil over further actions. While earlier the work was going on only within the civil legal framework, for the last several months it has been going also within criminal legal framework. This means that there is an on-going investigation into the crimes of the so-called investor Stati."  (*Id*.).

---

[6]   Notably, the ROK presented a number of the documents obtained by the Latvian authorities – the same documents that the ROK has claimed in the instant application demonstrate fraud and money laundering on the part of the Stati Parties – to the Swedish Court, which, having reviewed this evidence, rejected the ROK's fraud claims and upheld the Award.  (Dzhazoyan Decl., at ¶ 16).

## ARGUMENT

## I.   THE COURT SHOULD PERMIT THE STATI PARTIES TO INTERVENE

### A.   THE STATI PARTIES MAY INTERVENE AS OF RIGHT

A party may intervene under Federal Rule of Civil Procedure 24(a) upon satisfaction of four requirements: "(1) a timely application, (2) asserting an interest relating to the property or transaction which is the subject of the action (3) where the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and (4) the applicant's interest is not adequately represented by existing parties." *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996) (citing *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

The Stati Parties meet all four requirements.  *First*, this motion is timely.  The Court determines the timeliness of a motion by considering all of the circumstances of the case, particularly "how long the applicant had notice of the interest before it made the motion to intervene; the prejudice resulting from any delay; the prejudice to the applicant if the motion is denied; and any other unusual circumstances."  *Sackman*, 167 F.R.D. at 20.  Here, the Stati Parties moved to intervene shortly after the ROK filed the Application. Further, the ROK will not suffer prejudice if the Court hears the Stati Parties' objections.  Indeed, this Court has already ordered the ROK to give notice of this proceeding and the application to the Stati Parties.  Dkt No. 7.

*Second*, the Stati Parties have an interest in the documents sought by the ROK.  A permissible interest for intervention must be "direct, substantial, and legally protectable."  *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  Here, although the Application does not seek to obtain discovery *from* the Stati Parties, the documents sought by the ROK are intended for use *against* the Stati Parties in a criminal investigation pending

in Kazakhstan.  The Stati Parties thus have standing to challenge the ROK's Application.  *See In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (holding that "parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties").

*Third*, disposition of the Application may practically impair or impede the Stati Parties' ability to protect their interests, as the ROK seeks documents to bring criminal charges against the Stati Parties, and to defeat enforcement of the Stati Parties' US$500 million Award.  *Finally*, the Stati Parties' interests in this matter are not adequately represented and protected by King & Spalding, which does not itself intend to oppose this application.  To satisfy this prong, the Stati Parties must only make a minimal showing that "representation of [its] interest 'may be' inadequate."  *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (emphasis added) (citations omitted); *Sackman*, 167 F.R.D. at 22 (citations omitted).  The Stati Parties therefore must assert their own objections.

### B.      IN THE ALTERNATIVE, THE STATI PARTIES SHOULD BE GRANTED PERMISSIVE INTERVENTION

Alternatively, the Court should exercise its broad discretion and grant the Stati Parties permissive intervention under F.R.C.P. 24(b)(1), which permits intervention "on timely motion" by anyone who "has a claim or defense that share with the main action a common question of law or fact."  *Diversified Grp. Inc. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003); *see also Sackman*, 167 F.R.D. at 22-3 (citations omitted) (commonality requirement "not to be read in a technical sense, but only require[s] some interest on the part of the applicant").  The primary factor is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *Sackman*, 167 F.R.D. at 23.  "Other relevant factors include the nature and extent of the intervenor's interest, whether their interests are adequately represented and whether the

applicants for intervention will contribute to a full development of the issues presented for adjudication." *Id*. "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria." *Mass. Bricklayers & Mason Funds v. Deutsche Alt-A Secs.*, 273 F.R.D. 363, 365 (E.D.N.Y. 2011).

Here, intervention will not unduly delay or prejudice the rights of the current parties. In addition, the Stati Parties' submissions will assist the Court by providing a fuller picture of the context in which the Application, and the criminal proceedings in aid of which the Application was brought, must be viewed.

In summary, the Court should permit the Stati Parties to intervene in this case under either F.R.C.P. 24(a)(2) or 24(b)(1) for purposes of opposing the Application.

## II.    LEGAL STANDARD FOR § 1782 DISCOVERY

Courts must undertake a two-part inquiry when determining whether to allow discovery under § 1782. **First**, a court must decide whether the discovery sought satisfies the statutory requirements of § 1782. The Second Circuit has held that § 1782 imposes three statutory requirements: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (citations omitted).

**Second**, because § 1782 authorizes, but does not require, courts to allow discovery, a court must also decide whether to exercise that discretion. In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45 (2004), the Supreme Court established the factors that cabin that discretion. Specifically, a court must consider (1) whether the discovery sought is within the

foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782; (2) the nature of the foreign litigation, the character of the proceedings already underway, and the foreign country's receptivity to court assistance from the U.S.; (3) whether the § 1782 request conceals "an attempt to circumvent foreign proof-gathering limits" or other policies of the foreign country; and (4) whether the subpoena includes unduly intrusive or overly burdensome requests. Where the factors weigh against granting a § 1782 application, it should be denied. *See, e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 81 (2d Cir. 2004).

## III.    THE COURT SHOULD DENY THE ROK'S APPLICATION

### A.    THE § 1782 APPLICATION DOES NOT SATISFY THE DISCRETIONARY FACTORS SET FORTH IN *INTEL*

#### 1.    The Nature and Receptivity of the Foreign Tribunal Weighs Against Granting Discovery

The criminal investigation serving as the basis for this proceeding represents nothing more than a tool used by the ROK to further harass the Stati Parties and fish for information to collaterally attack the Award.  As set forth above, this is not the first time that the ROK has abused its government powers for improper purposes; as the Tribunal found in the Award, the ROK undertook a coordinated and concerted effort to harass the Stati Parties through a series of endless criminal and administrative investigations, tax claims and asset seizures, which cumulatively destroyed the value of the Stati Parties' investment.  (D.C. Proceedings, ECF 1, at ¶ 33; ECF 2-3, at ¶¶ 1086, 1093, 1414, 1416, 1425).

Together, the timing and substance of this criminal investigation – which the ROK commenced only after the Award was issued, notwithstanding the fact that the actions and events that lie at the heart of the investigation took place almost a decade ago – reveal its true purpose: To relitigate – using its own investigative resources to develop charges that the ROK will bring in

its own courts – issues that courts in the United States and around the world have repeatedly rebuffed.  The ROK's latest 1782 Application, which seeks evidence of the Stati Parties' payment of their attorneys for the purpose of proving "money-laundering," appears aimed more at smearing the Stati Parties and frustrating their attempts to enforce the Award than uncovering evidence needed for purposes of the never-ending Kazakh criminal investigation.  This Court should not indulge such abuses and should deny this discovery accordingly.  *See In re Application of the Gov't of the Lao People's Democratic Republic for an Order Pursuant to 28 U.S.C. § 1782 for Leave to Obtain Discovery*, No. 15-mc-18, 2016 WL 1389764, at *9 (D.N. Mar. I. Apr. 7, 2016) (noting skepticism concerning whether criminal investigation that purported to serve as a basis for Lao Government's 1782 application was commenced in good faith, and finding that "[w]ith respect to the alleged criminal investigation, because the Court finds that the motivating factor is winning civil litigation rather than discovering and punishing criminal conduct," discretionary factors weighed against granting the application).

That the ROK is a sovereign that seeks to pursue criminal charges in its own courts — particularly after multiple foreign courts have rejected the theory at the heart of its "investigation" — exacerbates the situation, since the ROK has virtually full (if not absolute) authority to conduct that investigation and to file charges in its own courts.  Indeed, it is for this reason that the "receptivity of the foreign tribunal" in this instance should not weigh in favor of granting discovery.  *See In re Application of the Gov't of the Lao People's Democratic Republic*, 2016 WL 1389764, at *9 (noting that although Lao Government "would obviously be 'receptive' to the Court granting its request," that "receptivity" was "not for a justifiable purpose.").

### 2. The Application Conceals an Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies of the United States

The Application should also be rejected because it seeks discovery for the purpose of undermining the Award and the valid, final and binding U.S. judgment confirming it. The ROK has already attempted unsuccessfully twice before to demonstrate to the U.S. courts that the Stati Parties engaged in fraud in connection with the Award and the dispute underlying it, and has likewise failed to prove such fraud in any other court to which it has presented its allegations, notwithstanding its five-year-long crusade of obtaining evidence from around the world in aid of that campaign. As other courts in this District have held, § 1782 should not be used "as an attempt to circumvent U.S. proof-gathering restrictions, just as much as those of a foreign country." *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127, 2015 WL 4040420, *7 (S.D.N.Y. Jun. 29, 2015).

That is precisely what the ROK seeks to do here. The ROK presented its fraud evidence to the D.C. Court, which refused to consider it and gave the United States' imprimatur to the Award by confirming it and entering judgment. (D.C. Proceedings, ECF 70). The same court again rejected the ROK's claim that the Stati Parties' actions amounted to "wire fraud" and "money laundering" under the civil RICO statute, dismissing the ROK's RICO action as "ill-advised." (RICO Proceedings, ECF 29, ECF 30). Both of the D.C. Court's decisions have been affirmed by the D.C. Circuit. (*Stati et al. v. Republic of Kazakhstan*, 773 Fed. Appx. 627 (D.C. Cir. 2019); *Republic of Kazakhstan, Ministry of Justice, v. Anatolie Stati, et al.*, No. 801 Fed. Appx. 780 (D.C. Cir. 2020)). The ROK is now asking another U.S. court to aid its efforts in undermining and attacking the same Award that the D.C. Court found to be valid and enforceable, and which it has now permitted to be enforced. The Application thus runs far afoul of bedrock U.S. public policy favoring the finality of judgments and obligating courts to defend their jurisdiction (and, by

20

extension, their rulings), *see cf. N. River Ins. Co.  v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (highlighting that "while a court sometimes may review an earlier ruling, nevertheless, because there is a strong policy favoring finality the court exercises its underlying power to review earlier rulings sparingly.") (internal punctuation omitted); *Gloria D. Dickerson v. USAir, Inc.*, 96 Civ. 8560 (JFK), 2001 U.S. Dist. LEXIS 27 *10 (S.D.N.Y. Jan. 4, 2001) (noting the "strong public policy favoring finality"), by asking this Court to exercise its jurisdiction to enable the ROK to avoid the judgment of a sister U.S. court.

Presented with similar circumstances, this Court has previously had no qualms denying abusive requests like the one before it now.  In the matter of *In re Application of Grynberg*, this court (Pauley, J.) relied on the United States' "well-established policy in favor of the finality of judgments, a policy which both preserves judicial resources and protects parties from abusive litigation" to deny a request made pursuant to § 1782 by a serial litigant who, after presenting and losing the exact same case before several United States courts, sought recourse from the courts of Switzerland.  *In re Application of Grynberg, et al.*, 223 F. Supp. 3d 197, 202 (S.D.N.Y. 2017).  As this court clearly stated, "[t]he fact that [Mr. Grynberg] has now launched an international front in his litigation crusade does not entitle Grynberg to the discovery that American courts have previously refused him.  Because this Court declines to provide aid under § 1782 for foreign claims that are plainly brought in an attempt to avoid the res judicata effects of prior lawsuits in the United States, Grynberg's application is denied."  *Id*.  The ROK's application should fare no better.  Much like in the case of Mr. Grynberg, the oil tycoon turned serial litigant featured in *In re Application of Grynberg*, the ROK's fraud claim has been rejected repeatedly by courts around the world, and every court to issue a ruling on the Award's validity has found it to be enforceable.  Although the ROK's efforts to collaterally attack the Award in Kazakhstan will not have any bearing on the

21

finality or validity of the Award or its enforceability outside Kazakhstan, the investigation has permitted the ROK to keep its fight alive by serving as the basis for continuing to seek information from parties and judicial authorities around the world in the hopes of finding anything with which to attack the Award's validity and the Stati Parties' reputation.  This Court should refuse to aid the ROK in this never-ending, worldwide fishing expedition and deny the Application.

### 3.   The Discovery Sought is Improper Under Fed. R. Civ. P. 26

#### a.   *The ROK's Discovery Requests are Cumulative, Duplicative and Irrelevant*

A court may deny a party's § 1782 application if it considers the request to be "made in bad faith, for the purpose of harassment, or unreasonably seek[ing] cumulative or irrelevant materials… just as it can if discovery was sought in bad faith in domestic litigation."  *See Euromepa, S.A. v. R. Esmerian*, 51 F. 3d 1095, 1101 n. 6 (2d Cir. 1995) (a district court may deny in whole an application under § 1782 if it is "made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials … just as it can … in domestic litigation.").

Consistent with the findings of the *Euromepa* court that a party's § 1782 application should be denied if the request unreasonably seeks "cumulative or irrelevant materials," *Euromepa*, 51 F.3d at 1101 n.6, courts in this Circuit and others have found that "[a] court considering a request for discovery under § 1782 must also be mindful of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure."  *In re Auto-Guadeloupe Investissement S.A.*, 12-MC-221 (RPP), 2012 U.S. Dist. LEXIS 147379 *12 (S.D.N.Y. Oct. 10, 2012).

The instant application seeks King & Spalding's production of wire transfer information and related payment instructions issued by Stati or their wholly-owned, controlled or related entities that paid legal expenses from any accounts in Rietumu Bank in Latvia.  It is unclear why the ROK is seeking this information from K&S – it is already in cooperation with the Latvian

22

authorities for the purpose of obtaining wire transfer information from accounts held in the name of or controlled by the Stati Parties and allegedly related entities in Rietumu Bank.  Indeed, the ROK claims that it has already obtained evidence from the Latvian authorities that King & Spalding was paid through what the ROK alleges to be "laundered money."  (Declaration of Ruslan Ashenov dated May 19, 2020, ECF 3, at ¶ 25).

Moreover, it is entirely unclear based on the ROK's application what end it believes this discovery will serve.  Although the ROK's petition states that "[t]he requested discovery would be for use in a criminal investigation underway in Kazakhstan," it does not bother to explain how wire transfer information that simply confirms that payments were made to King & Spalding by the Stati Parties and/or Hayden Intervest – the fact and details of which are **already known** to the ROK, on its own admission[7] – will prove that the funds used to make those payments were "laundered or tainted" at some earlier point in time.  Rather, the ROK's application appears more designed to further harass the Stati Parties – this time through their counsel – and to smear the Stati Parties' with an "unveil[ing]" of the ROK's latest allegations of fraud, as promised by Mr. Bekatayev.  Accordingly, the discovery sought should be denied as duplicative, cumulative, vexatious and irrelevant.

## CONCLUSION

For all of the reasons above, the Stati Parties respectfully request that this Court grant their Motion and to deny the Application in its entirety.


Dated:  New York, New York
        May 15, 2020

                              Respectfully submitted,

---

[7]     Declaration of Ruslan Ashenov dated March 19, 2020, ECF 3, at ¶¶ 25-30.

/s/ James E. Berger
James E. Berger
Charlene C. Sun
Enrique J. Molina

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2200
(212) 556-2222 (fax)
jberger@kslaw.com

*Attorneys for Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd.*